**Robert GEISERMAN,**
**Plaintiff–Appellant,**

v.

**John H. MacDONALD, et al.,**
**Defendants.**

**A.B. & A.B. & Associates,**
**Defendants–Appellees.**

**No. 89–1015.**

United States Court of Appeals,
Fifth Circuit.

Feb. 7, 1990.

Gary B. Sack, Andrew C. Hall, Richard F. O'Brien, Hall, Poller & O'Brien, Miami, Fla., for plaintiff-appellant.

Paul M. Koning, Robert H. Mow, Jr., Hughes & Luce, Dallas, Tex., for Turner and Turner & Assoc.

Before GEE, JONES, and SMITH, Circuit Judges:

EDITH H. JONES, Circuit Judge:

## I.

### FACTS

Plaintiff-appellant, Robert Geiserman, filed suit against some business partners and the attorney who had represented them in a real estate venture. Geiserman alleged that an attorney, A.B., and his firm, A.B. and Associates (referred to as Attorney), represented the venture and the venture partners while contemporaneously representing an adverse party. The district court struck Geiserman's late-filed designation of an expert witness, refused to permit his untimely answers to interrogatories and granted summary judgment to appellee Attorney and his firm.[1] We hold that the court's insistence upon enforcing discovery timetables was proper, and we affirm.

### A. Geiserman's Allegations

In his complaint, Geiserman stated that he and other venture partners intended to develop a shopping center. The venture entered into a lease agreement with Racquetball Resorts International, which was controlled by Finley, one of the venture partners. When Finley decided to sell his interests in Racquetball Resorts, he wanted to renegotiate the lease terms to make Racquetball Resorts more attractive to prospective purchasers. Geiserman alleged that Attorney and the other venture partners conspired to modify the lease terms to the venture's detriment. Geiserman also contended that Attorney represented Finley's individual interests, Racquetball Resorts' interests and the joint venture's interest simultaneously and adversely to the joint venture.

From these allegations, Geiserman concocted causes of action for legal malpractice and breach of fiduciary duty against Attorney and his firm.

### B. Proceedings in the District Court

The case was filed in June 1987. Pursuant to a scheduling order dated January 19, 1988, the case was to proceed along the following schedule: the trial was set for December 5, 1988; discovery was to be completed by October 3, 1988; the plaintiff was to "file a written designation of its expert witnesses at least 90 days before trial", and the defendants were to designate their expert witnesses at least 75 days before trial.

Geiserman missed, without timely explanation, two deadlines for identifying his expert witnesses. On July 28, 1988, Attorney inquired in interrogatories as to the identity of Geiserman's expert witnesses. These interrogatories were not answered by the August 29, 1988 deadline.[2] Moreover, Geiserman's motion for an enlargement of time to respond to the interrogatories, filed September 1, was denied because he failed to show good cause for the extension. The court denied a subsequent request for extension, which was filed on September 26, the following day.

---

1. Geiserman voluntarily dismissed the claims he had asserted against his venture partners after the district court granted Attorney's motion for summary judgment.

2. In fact, Geiserman failed to respond until September 26, 1988, when some answers were delivered to Attorney. These answers came nearly four weeks after the rule 33 deadline of 30 days and just before the discovery deadline of October 3.

Second, Geiserman did not designate any expert witnesses by the September 6 deadline imposed by the court's scheduling order and also required by Local Rule 8.1(c).[3] Without leave of court, however, on September 22, Geiserman attempted to designate two expert witnesses. This designation was later amended because the attorney expert witness declined to participate.

Responding to Geiserman's delays in the face of the impending discovery deadline, Attorney filed several motions: one to dismiss or alternatively to preclude evidence as a sanction for failure to answer the interrogatories and for summary judgment; and a motion to strike Geiserman's untimely expert witness designation.

On November 3, the court ruled on the various pending motions. The court granted Attorney's motion to strike Geiserman's Attorney's motion to dismiss as a sanction. The court initially denied Attorney's motion for summary judgment based on Geiserman's contention that some of his claims against Attorney could proceed without expert testimony. Upon a later motion for reconsideration, however, the court found that Geiserman failed to support his malpractice claim with sufficient summary judgment evidence, expert or otherwise, to avoid summary judgment.[4]

Geiserman raises several objections on appeal. First, Geiserman contends that the court improperly struck his expert witness designations. Geiserman also argues that the court erred in disregarding evidence that he offered in opposition to the summary judgment. Finally, Geiserman contends that the court erred in granting summary judgment against him.

3. See Local Rule 8.1(c) of the Northern District of Texas ("Unless otherwise directed by the Presiding Judge, each party shall file a written designation of its expert witnesses at least 90 days before trial.").

4. The chronology of the court's order refutes Geiserman's contention that the court granted summary judgment as a sanction for his discovery abuse. Rather, the court first addressed the motion for sanctions for untimely discovery answers. Then it considered the summary judg-

## II.

## ENFORCEMENT OF DISCOVERY ORDERS

Without disputing that he missed two deadlines for designating expert witnesses,[5] as recited above, Geiserman complains that the district court improperly prevented him from presenting expert testimony to support his claims of legal malpractice against Attorney.

■ The court's order striking the late expert witness designation and precluding any expert witness testimony involves both the enforcement of a scheduling order and the enforcement of local rules. We review either type of order under the abuse of discretion standard. See Bradley v. United States, 866 F.2d 120, 124 (5th Cir.1989) (amendment of pretrial order); Sturgeon v. Airborne Freight Corp., 778 F.2d 1154, 1157–58 (5th Cir.1985) (refusal to allow expert testimony because of late designation).

■ Rule 16(b) of the Federal Rules of Civil Procedure authorizes the district court to control and expedite pretrial discovery through a scheduling order. Consistent with the authority vested in the trial court by rule 16, our court gives the trial court "broad discretion to preserve the integrity and purpose of the pretrial order." Hodges v. United States, 597 F.2d 1014, 1018 (5th Cir.1979) (affirmed refusal to modify pre-trial order); see also Fed.R. Civ.P. 16(b), Advisory Committee Note (trial court may modify scheduling order for good cause). Moreover, a trial court's decision to exclude evidence as a means of enforcing a pretrial order "must not be disturbed" absent a clear abuse of discretion. See Davis v. Duplantis, 448 F.2d 918, 921 (5th Cir.1971); Fed.R.Civ.P. 16(f)

ment motion, having excluded evidence that Geiserman filed untimely.

5. The court refused to consider those interrogatory responses that Geiserman returned to Attorney on September 26. The court had twice denied Geiserman's motion for an enlargement of time to respond to the interrogatories on the ground that Geiserman failed to show good cause for an extension. See infra. slip op. at 2034–35 p. 7930.

(court may sanction party's failure to comply with scheduling order by excluding evidence).

■ We review the court's exercise of discretion to exclude evidence that was not properly designated by considering the following four factors: (1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice. *Bradley*, 866 F.2d at 125 (citing *Murphy v. Magnolia Electric Power Ass'n*, 639 F.2d 232, 235 (5th Cir.1981)). Preliminarily, we note that in excluding the evidence, the court was merely enforcing the deadlines plainly set out in the court order and local rule for designating witnesses.

■ The reasons offered by Geiserman for his failure to timely designate are weak, at best. He asserts that the pretrial order did not specify a deadline date for designation. This is incredible, because the scheduling order and local rule 8.1(c) plainly impose a deadline to designate his expert witnesses at least 90 days before trial. One does not require a legal degree to count back 90 days from the scheduled trial date of December 5, which the pretrial order contained. The second excuse, that the omission resulted from a scheduling mistake in counsel's office, is not the type of satisfactory explanation for which relief may be granted. *See Sturgeon v. Airborne Freight Corp.*, 778 F.2d 1154, 1158 (5th Cir.1985) (plaintiff should have been aware of need for expert testimony and claim of last minute need is meritless).

The next factor for our consideration involves the relative importance of the excluded testimony. In his response to Attorney's motion to exclude expert testimony, Geiserman stated that expert testimony would be useful to assist the jury in determining complex issues, but he also stated that some of his claims of malpractice could be proven without expert testimony. Subsequently, however, he stated that expert testimony was essential "for complete proof of the majority of the malpractice claims against the [Attorney] Defendants". While expert testimony is necessary to establish the standard of care and possible breach in most legal malpractice cases, such testimony is not critical if the allegation of negligence is apparent to a lay person or established as a matter of law.[6] We shall assume *arguendo* that expert testimony was significant to Geiserman's case—so much the more reason to be sure its introduction was properly grounded.

Geiserman argues that a delay of a couple weeks in designating the expert witness would not have caused any prejudice to Attorney. Such delay, however, would have disrupted the court's discovery schedule and the opponent's preparation. Attorney stated that his own trial strategy was affected by Geiserman's extensive delay in answering interrogatories and similar delay in designating any expert witness. Attorney explained that he chose and designated his own expert witness in "reliance on Plaintiff's apparent decision to forgo expert testimony."[7] Attorney also argued that he would be unable to prepare for and take the depositions of Geiserman's proposed experts before the discovery deadline of October 3. Turner also mentioned the expense that would result from an extended discovery schedule for Geiserman's failure to adhere to deadlines. Although Attorney might not suffer the degree of unfair surprise associated with the last-second designation of an unscheduled witness, *see Bradley*, 866 F.2d at 125, the trial court has latitude to control discovery abuses and cure prejudice by excluding improperly designated evidence.

The final factor we should consider is the possibility of a continuance. Although Geiserman mentioned to the lower court

---

6. *See* 2 R. Mallen & J. Smith, Legal Malpractice § 27.15, at 671–72 (1989); Annotation, Admissibility and Necessity of Expert Evidence As To Standards of Practice and Negligence In Malpractice Action Against Attorney, 14 A.L.R.4th 170, 179–80, 188–90 (1982).

7. Additionally, Attorney expected experts to be identified through answers to the interrogatories before deposing Geiserman or other witnesses scheduled for depositions.

that he was contemplating a requested continuance in order to prepare his proposed expert witness, counsel never formally requested a continuance from the court. In fact, in a brief to the court Geiserman stated: "the Plaintiff is anxious for the trial of this case to proceed and does not want any delay of his day in court." While Attorney could have conducted new discovery and redeposed witnesses under a continuance in response to the untimely designation, this would have resulted in additional delay and increased the expense of defending the lawsuit. Moreover, a continuance would not deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders. *See Bradley*, 866 F.2d at 126.

Consequently, the court's refusal to modify the scheduling order and its enforcement of the time deadlines did not abuse its discretion. *See Sexton v. Gulf Oil Corp.*, 809 F.2d 167, 170 (1st Cir.1987) (court affirmed preclusion of testimony due to untimely designation of expert witness). Geiserman has not provided a valid reason that would justify excusing him from the deadlines imposed by the lower court. The claimed importance of expert testimony underscores the need for Geiserman to have timely designated his expert witness so that Attorney could prepare for trial.[8] The importance of such proposed testimony cannot singularly override the enforcement of local rules and scheduling orders. *Cf. Hull v. Eaton Corp.*, 825 F.2d 448, 452 (D.C.Cir.1987) (court may sanction unexcused failure to designate witness by precluding testimony "without first determining how badly the party needs the witness").

■ Regardless of Geiserman's intentions, or inattention, which led to the flouting of discovery deadlines, such delays are a particularly abhorrent feature of today's trial practice. They increase the cost of litigation, to the detriment of the parties enmeshed in it; they are one factor causing disrespect for lawyers and the judicial process; and they fuel the increasing resort to means of non-judicial dispute resolution. Adherence to reasonable deadlines is critical to restoring integrity in court proceedings. We will not lightly disturb a court's enforcement of those deadlines and find no reason for doing so here. The court did not abuse its discretion in striking Geiserman's untimely witness designation and precluding Geiserman's expert testimony.[9]

### III.

### SUMMARY JUDGMENT

Geiserman also contends that the court erred in granting summary judgment. In raising this point, Geiserman also complains that the court erroneously disregarded his summary judgment evidence.

Upon reconsideration the court granted Attorney's motion for summary judgment because it concluded that Geiserman failed to provide any summary judgment proof to create a fact issue on the elements of his claims. The court held that the documents offered by Geiserman, a list of contested fact issues in an unfiled, proposed pretrial order; an affidavit of an expert who was precluded from testifying; and unfiled and untimely interrogatory responses, could not be used to oppose summary judgment. We will first address whether the court abused its discretion in disregarding such proffered evidence.

■ First, we uphold the court's exclusion of the affidavit of the proposed expert witness, in order to enforce its discovery order and local rule. Geiserman cannot attempt to create a fact issue with evidence of facts that cannot be proven at trial. *See*

---

**8.** *See, e.g., Bradley,* 866 F.2d at 125–27 (court held that trial court abused its discretion in allowing expert testimony of witnesses who were not designated in compliance with local rules).

**9.** *See Sturgeon,* 778 F.2d at 1159 ("Having designated Bunch as an expert witness after the time required by Local Rule 8.1(c), plaintiff had to be prepared to try the case without this expert testimony...."). We also determine that the court properly exercised its discretion in denying additional time to designate expert witnesses because scheduling oversight does not satisfy the excusable neglect standard required by Fed. R.Civ.P. 6(b)(2). *See infra* note 10.

10A Wright & Miller, Federal Practice and Procedure, § 2727, at 156 (1983). "Rule 56(e) requires the adversary to set forth facts that would be admissible in evidence at trial. Material that is inadmissible will not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial and continuing the action would be useless." *Id.* (footnote omitted). Although the summary judgment evidence need not be in "a form that would be admissible at trial," *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), the party opposing summary judgment must be able to prove the underlying facts. *See* Fed.R.Civ.P. 56(e) ("set forth such facts as would be admissible in evidence"). Since the court ruled that Geiserman could not offer expert testimony at trial, he cannot use that expert witness's affidavit to oppose summary judgment.

 The court also acted properly in denying Geiserman additional time to respond to Attorney's interrogatories and in refusing to consider Geiserman's responses to Attorney's interrogatories, which were returned over four weeks late and were never appended to the opposition to the summary judgment motion. Geiserman's reason for the failure to respond, that counsel's father had unexpectedly passed away, is insufficient since that unfortunate event occurred after the time to respond had expired. While the court had authority to grant a time extension under Fed.R.Civ.P. 6(b) upon a showing of excusable neglect, no such showing was made and we find no abuse of discretion in the court's refusal to grant extra time.[10] The court may impose sanctions for a party's failure to answer interrogatories and failure to comply with scheduling orders. *See* Fed.R.Civ.P. 37(b)(2), (d) (court may prohibit introduction of evidence or strike pleadings for failure to obey scheduling order under rule 16(f) or failure to answer interrogatories as provided by rule 33). Accordingly, the court acted within its discretion in disregarding the late responses to the interrogatories. *See M.E.N. Co. v. Control Fluidics, Inc.,* 834 F.2d 869, 872 (10th Cir.1987) (rule 37(b)(2) sanctions available for failure to answer interrogatories); 8 Wright & Miller, *supra,* § 2291, at 807, 809–10. Finally, the list of unfiled fact issues for the proposed pretrial order does not constitute summary judgment evidence, but is merely in the nature of pleadings, which cannot be used to create an issue of fact. *See Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553 (rule 56(e) requires non-movant to go beyond pleadings to create fact issue).

 We must now determine whether the court erred in granting Attorney's motion for summary judgment. Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof. A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir.1988) (citing *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2553). If the party with the burden of proof cannot produce any summary judgment evidence on an essential element of his claim, summary judgment is required. *See id.* at 1123–24.

 To prove his claims of legal malpractice, Geiserman needed to establish the duty of care, and the breach, if any, of that duty. In most legal malpractice cases, "expert testimony is necessary to establish the standard of care since only an attorney can competently testify to whether the defendant comported to the prevailing legal standard." 2 R. Mallen & J. Smith, Legal Malpractice § 27.15, at 667, 668–69 ("consequence of not producing expert testimony

---

**10.** *See Farina v. Mission Investment Trust,* 615 F.2d 1068, 1076 (5th Cir.1980) (court did not abuse its discretion by refusing to grant additional time to file affidavits where there was no showing of excusable neglect); *see also McLaughlin v. City of LaGrange,* 662 F.2d 1385, 1387 (11th Cir.1981), *cert. denied,* 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982) ("a busy practice does not establish 'excusable neglect'"); 4A Wright & Miller, Federal Practice and Procedure § 1165, at 480–81 (1987) (rule 6(b) motion will probably not be granted on the ground of "simple inadvertence").

is the failure to prove an essential element of the cause of action"); *e.g. Trubell v. Patten,* 582 S.W.2d 606, 611 (Tex.Civ.App. —Tyler 1979, no writ) (court affirmed trial court's exclusion of plaintiff's expert witness who was not identified prior to trial and subsequently directed verdict for attorney-defendant in malpractice case). Similarly, breach of a fiduciary duty or a conflict of interest requires proof of expert testimony. *See* 2 R. Mallen & J. Smith, *supra,* at 670; *see also Carlson v. Morton,* 745 P.2d 1133, 1137 (Mont.1987). In instances of egregious negligence that are obvious to a lay person or established as a matter of law, expert testimony is not required. *See* 2 R. Mallen & J. Smith, *supra,* at 671–72; *see, e.g., Suritz v. Kelner,* 155 So.2d 831, 834 (Fla.Dist.Ct.App.1963) (court did not require expert testimony for plaintiff to establish negligence by attorney-defendant's failure to tell plaintiff to answer properly served interrogatories).

The district court determined that Geiserman failed to provide proper summary judgment evidence in support of his claims. On appeal, having unsuccessfully objected to the court's rulings excluding evidence, Geiserman also directed us to no other summary judgment evidence in the record to support his claims. Although Geiserman reurges the allegations stated in his complaint as a basis to defeat summary judgment, the summary judgment procedure requires the non-movant to go beyond the pleadings and support his contentions with some evidence. Geiserman has failed to create a fact issue on the elements of any claim for malpractice, including theories of negligence that would not require expert testimony. Finding no abuse of discretion in the court's evidentiary rulings and discovery orders, and no additional summary judgment evidence, we also find the court's order granting Attorney's motion for summary judgment correct.

Accordingly, the judgment of the district court is AFFIRMED.